UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA JEWETT, | Case No. |
| *Plaintiff*, | CLASS ACTION COMPLAINT |
| *v.* | DEMAND FOR JURY TRIAL |
| SECURE INVESTING ADVISORS, LLC D/B/A CAVALA FUNDING SOLUTIONS, | |
| *Defendant.* | |

## **CLASS ACTION COMPLAINT**

Plaintiff Joshua Jewett ("Plaintiff Jewett" or "Jewett") brings this Class Action Complaint and Demand for Jury Trial against Defendant Secure Investing Advisors LLC d/b/a Cavala Funding Solutions ("Defendant" or "Cavala Funding Solutions") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing calls and sending text messages to consumers without consent including calls and texts to phone numbers that are registered on the national Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls and text messages stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Jewett, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### **PARTIES**

1.      Plaintiff Jewett is a resident of Norwalk, Connecticut.

2.      Defendant Cavala Funding Solutions is a corporation registered in New York with its headquarters located Manhattan.

1

## JURISDICTION AND VENUE

3.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.      This Court has personal jurisdiction over the Defendant because the Defendant is located in this District.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

6.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8.      By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10.     According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in August 2024 alone, at a rate of 143.8 million per day. www.robocallindex.com (last visited September 29, 2024).

11.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

## COMMON ALLEGATIONS

14.     According to New York's division of corporations, Cavala Funding Solutions is an

assumed name of Secure Investing Advisors LLC:



15.     Cavala Funding Solutions is a business funding lender that solicits financing

solutions to consumers throughout the US.[4]

16.     Cavala Funding Solutions place calls and sends solicitation text messages to

generate business.

17.     Unfortunately, some of these calls and texts from Cavala Funding Solutions are

being placed to consumers without consent, including to consumers that registered their phone

numbers on the DNC, as per Plaintiff's experience.

---

[3] https://apps.dos.ny.gov/publicInquiry/AssumedNameHistory
[4] https://www.linkedin.com/company/cfsnewyork/about/

18.     To make matters worse, Cavala Funding Solutions lacks a sufficient opt-out system to ensure that a consumer who notifies Cavala Funding Solutions to stop calling and/or texting them will be removed from their contact list.

19.     In response to these calls and text messages, Plaintiff Jewett brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF JEWETT'S ALLEGATIONS

20.     Plaintiff Jewett is the sole owner and user of his cell phone number ending in 2879.

21.     Plaintiff Jewett's phone number was registered on the DNC on December 30, 2016.

22.     Plaintiff Jewett uses his cell phone number for personal use only as one would use a landline telephone number in a home.

23.     Plaintiff Jewett uses his cell phone number primarily to communicate with friends and family. It is also used to schedule personal appointments and for other household needs.

24.     Plaintiff Jewett pays for his cell phone number in full. The phone number is not reimbursed by a business.

25.     On June 25, 2024 at 8:17 AM, Plaintiff Jewett received an unsolicited text message to his cell phone from 833-841-3828.

26.     The text message identified the company name CFS so Plaintiff immediately texted 833-841-3828 back asking what CFS is.

27.     Plaintiff received response back right away stating that CFS stands for Cavala Funding Solutions.

28.     In response to this text, Plaintiff replied back asking to be removed from Defendant's contact list, stating that his cell number is registered on the DNC:



29.     Despite a clear stop request, Plaintiff Jewett received a 2nd unsolicited text message to his cell phone on July 15, 2024 at 7:07 AM from 833-841-3829:



30.     On July 18, 2024 at 1:01 PM, Plaintiff Jewett received a 3rd unsolicited text message to his cell phone from 844-956-5959.

31.     In response to this text message, Plaintiff Jewett immediately texted 844-956-5959 back asking if the sender has a website.

32.     Plaintiff Jewett received a text message back from 844-956-5959 stating that the website is cavalafunding.com.

33.     Plaintiff Jewett texted 844-956-5959 back right away asking to be removed from Defendant's contact list, stating that his cell number is registered on the DNC, with an additional request asking not to be contacted again:



34.     Despite this additional stop request, Plaintiff Jewett received 2 unsolicited calls to his cell phone on July 30, 2024 from an employee named Jonathan at Cavala Funding Solutions.

35.     The purpose of the calls was to solicit business funding.

36.     During these calls, Plaintiff told Jonathan to stop contacting his cell phone number.

37.     Plaintiff Jewett received 2 identical text messages on July 30, 2024 at 1:50 PM, shortly after speaking to Jonathan, both of which identify the website for Cavala Funding Solutions.

38.     In response to the text messages, Plaintiff Jewett repeated his requests for the calls and texts to stop.

39.    Plaintiff Jewett received a confirmation from Jonathan that his file had been removed, implying that the calls/texts would stop:



40.    Plaintiff Jewett received a 7th unsolicited text message to his cell phone from 844-956-5959 on September 9, 2024 at 12:12 PM:

> Mon, Sep 9 at 12:12 PM
>
> Hey Joshua, Alex from CFS. We specialize in fast funding to help businesses thrive. How much can help take you to the next level? Reply STOP to opt-out

41.    Plaintiff Jewett received an 8th unsolicited text message to his cell phone on September 24, 2024 at 7:43 AM from 844-956-5959:

> Today 7:43 AM
>
> Hi Joshua, it's Rachel with CFS. I'm doing 100k return 118k & LOC'S! Anywhere from 10K - 2M for your business. Best email for you? Reply STOP to End

42.     Plaintiff Jewett has never done business with Cavala Funding Solutions.

43.     Plaintiff Jewett has never provided his cell phone number to Cavala Funding Solutions.

44.     The unauthorized solicitation telephone calls and text messages that Plaintiff Jewett received from or on behalf of Defendant Cavala Funding Solutions have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

45.     Seeking redress for these injuries, Plaintiff Jewett, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

46.     Plaintiff Jewett brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Cavala Funding Solutions called and/or texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called/texted Plaintiff.

> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Cavala Funding Solutions called and/or texted more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called/texted Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling/texting.

47.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's

attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Jewett anticipates the need to amend the Class definition following appropriate discovery.

48.    **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

49.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)    Whether Defendant's conduct violated the TCPA;

(b)    Whether Defendant placed multiple calls and/or text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call/text;

(c)    whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

50.    **Adequate Representation**: Plaintiff Jewett will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Jewett has no interests antagonistic to those of the Classes, and the

Defendant has no defenses unique to Plaintiff. Plaintiff Jewett and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Jewett nor his counsel have any interest adverse to the Classes.

51.    **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Jewett. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Jewett and the Do Not Call Registry Class)**

52.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

53.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

54.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

55.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Jewett and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

56.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Jewett and the Do Not Call Registry Class received more than one telephone call and/or text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

57.     As a result of Defendant's conduct as alleged herein, Plaintiff Jewett and the Do

Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

58.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Jewett and the Internal Do Not Call Class)**

59.     Plaintiff repeats and realleges paragraphs 1-51 of this Complaint and incorporates them by reference herein.

60.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are

recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

61.     Defendant placed calls and/or text messages to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/text messages.

62.     The TCPA provides that any "person who has received more than one telephone call/text message within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

63.     Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's

conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Jewett requests a jury trial.

Respectfully Submitted,

**JOSHUA JEWETT**, individually and on behalf of all others similarly situated,

DATED this 7th day of November, 2024.

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com

15

COLEMAN PLLC
11 Broadway, Suite 615
New York, NY 10001
(877) 333-9427

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
*Pro Hac Vice motion forthcoming

*Attorneys for Plaintiff and the putative Classes*